My name is Mark Nurheim and I represent Mr. Issa Bacilli. I wanted to start off by just mentioning something in passing because my case is very similar to the case that we just heard previously. In my case, originally, the immigration judge made an adverse credibility finding. The BIA on appeal reversed the adverse credibility finding, finding that it was clearly erroneous. In doing that, they also said that they were mandated to accept Mr. Bacilli's statement as truthful. They also said, accepting this as a page, Administrative Record 3, accepting a respondent's testimony as true, we must find that the respondent sufficiently established his identity and date of entry within the United States. And then they cited C. Salam v. INS 229F3RD 1234. They continue to say, consequently, we further find that the respondent's asylum application was timely. And I think that's relevant to many of these cases that are coming up before you on timeliness. I think there is a way that you can look at a credibility determination. If you make a determination that it is reversible, then I think that does lead you to the next thing regarding timeliness of asylum applications. Now, with regard to my specific case, the government essentially made two arguments. The first is that a reasonable fact finder could conclude, as the agency did, that Mr. Bacilli failed to demonstrate past persecution on account of a protected ground. The government argues that Mr. Bacilli failed to demonstrate that such persecution was perpetrated on account of his political opinion or his religion, rather than general effort to recruit young men to the rebels' cause. And, of course, I'm talking about the RUF rebels in Sierra Leone. Citing Ninth Circuit precedent, the BIA stated in its decision that when a respondent presents credible evidence of persecutory conduct motivated at least in part by the respondent's political opinion, such showing is sufficient. And the cases referenced are Carmen Molina. The BIA, however, said that there was no evidence that the rebels were aware of Mr. Bacilli's political opinion, nor was there any evidence that the RUF rebels were motivated even in part by Mr. Bacilli or his family's political opinion. And that's at AR-3 again. That simply wasn't true in the record. Mr. Bacilli testified that when the RUF came to his family's home to take him away, his parents told the rebels Wait a minute. Wait a minute. It's a little sequence. It's very important. They came and arrested him to take him away. Correct. And then the family objected, right? No. I think at the same time, the family, as they came to take him, the family said, don't take our son. We don't support you. Don't take him. And that was and they told him not to take him with him. And that's at AR- They had already taken him. Pardon me? They had already arrested him. No, they had. No, that's at page 106, Your Honor. He testified that the rebels then killed his mother and father in front of him. That's again at AR-106. I think it also said that his mother was holding his hand, I think. Right. And I think elsewhere in the testimony, it says that he went back, that after they killed his parents, that they told him to go into the home and get some of his belongings. So he testified that they were killed in front of him. And the BIA said that they, as I said, they ruled the adverse credibility determination as being clearly erroneous. So I think we have to take those statements that he made as true. They took him away and held him for about one year. And during that time period, he testified that he was kicked and beaten and stripped and denied medical care and things like that. They tried to train him to shoot a gun. He refused to. He told them he didn't believe them. He didn't support them. And then he also mentioned in his affidavit that his family supported the government and not the rebels, and they did not agree with the rebels and would not join them. And that's at AR-142 and 145. The BIA, and so I think that undercuts the BIA's claim that there was no evidence whatsoever as to what his political opinion was and whether he expressed it to the rebels. What about his religious beliefs? He mentioned his religious beliefs, too, that those wouldn't allow him to kill. I think there's other evidence, and I'm not sure if it's in this record per se, but that was also one of the motivating bases for RUF rebels to attack, that they were primarily either Christian or animist groups, and they were attacking Islamic communities and also different clans and tribes. The BIN then found that the evidence established that the rebels were motivated by another cause, which they simply reduced to recruitment for rebels. And I think it's interesting to note that in mixed motive cases where there's even a hint that an asylum applicant is making a mixed motive claim and claiming that he's notified his persecutors or that the persecutors know what his political opinion is or his religious beliefs, the government responds either with by saying, well, that was clearly just a recruitment effort, which is kind of strange because all of a sudden that goes to the motivation of the persecutors rather than what the person who was persecuted has told them, and they shift that argument. And to me, that speculation on the motivation of the persecutors, in fact, sets the Elias Zacharias analysis on its head. And that's usually what the government seems to do in these cases or often. The government states that in this regard, the rebels never advised him that he was being recruited or beaten on account of any political opinion, actual or imputed, or a religious basis. That's the government's brief at page 20. And it doesn't seem to me that rebels really need to tell that to captives. It seems to me that isn't it enough that pretty much the whole world knew at the time that the RUF was a rebellious political group fighting to overthrow Sierra Leone's government. The government characterizes Mr. Pachilli's statements on the issue as being only a conclusory made to the immigration judge that he and his family supported the government of Sierra Leone and not the rebels, and they failed to articulate in any detail to the IJ or the BIA or this court the political opinions he had or that any of the family members had. You're saying that if he had been seized by the rebels, arrested, and taken away, that enough would be enough to establish a political motive without regard to anything being said? Maybe not in general, but in this particular case, where it was clear that there was political motivation, I mean... You say it was clear there was a political motivation. That's what I want to know. Where's the evidence of the political motivation? Well, he told them when they came to get him that he, you know, they wanted to recruit him. He said, no, I'm not. I don't support you. I'm not going to help you. I'm not going to fight for you. Is that in the record? His parents told him that. That's different. Well, but then he also told them later on when they had him captive and they tried to train him to shoot arms and things like that. Would that establish the political motive if they told him later? I think that establishes a continuing political motive to continue to hold him, to continue to abuse him, and to hold him for more than one year. The trick in this a little bit is that if it was simply to reduce, to recruit young men, then it's hard to explain why they went out and killed the rest of his family, why they killed his brother, or his brother-in-law, why they slaughtered them and the rest of his family. And if that, to me, is evidence that the RUF was trying to subdue the populace in the area to convert the government to their political position and to their party motives. And that's what they were doing. And that's clear motivation on the part of the persecutors. And he's already come out and said, we don't believe the government, excuse me, we don't believe in the RUF, and I oppose them. And I'd like to reserve my time unless there are, oh, also there's another issue of changed country conditions. We think that the evidence at the time in 2003, 2004, even the Department of State reports show that the RUF rebels in 2003 and 2004 were still holding prisoners, that they, the government lacked resources to control, they didn't have investigative capabilities. And the CIA fact book says that the Civil War was depleting natural resources in Sierra Leone. There was domestic violence, domestic fighting continuing among disparate rebel groups. So our position is that the government hasn't established evidence of changed country conditions. They didn't meet their burden. And independent of that, we still believe he would have qualified for humanitarian asylum based upon the violence that was committed upon his family. Thank you. May it please the Court. Shelly Goad for the Respondent. Michael Mukasey. Your Honors, there's no doubt that what happened to Mr. Michelli is tragic and unfortunate, but the record in this case does not compel the conclusion that the harm to which he was subjected was perpetrated even in part on account of a statutorily protected ground, rather than a general effort to recruit young men to the RUF rebels' cause. Now, what do you do with the argument that they continued to hold him, even that they knew based on his religion that he wouldn't fight? Well, first of all, I respectfully dispute that the rebels knew of his religious opposition to fighting. Well, you have to accept his credibility. And he says he told them that his religion wouldn't allow him to do this. Yes, he says that, but I've searched the record, and the only statement I've found in the record is at page 107 during his testimony in which he says, So my father have told me because of our religion I must not shoot anybody or kill anybody. From that statement, it's not clear that he expressed to the rebels the religious basis of his opposition. Well, why isn't that a statement of his religious belief, I must not kill anybody? Well, he says that in his testimony, but he doesn't indicate whether that's what he said to the rebels. That's my only... I'll read that again. So then they give me the gun to have training with them, and I say no, that's when they're going to start beating me. Also, Mr. Bacilli, the rebels, again, never advised him that they were, they abducted him or recruited him or continued to hold him because of his political opinion or his religion. And it's not absolutely necessary that they do that, but I think it's important in this case. What about the circumstantial evidence that they killed his whole family? Unfortunately, the RUF rebels, their record in Sierra Leone does indicate that they killed hundreds of thousands of people indiscriminately in Sierra Leone. So unfortunately, I don't think you can use that as circumstantial evidence to indicate that that was motivated in any way on account of any political opinion that his family had. In fact, he only makes conclusory statements about the political opinion that he or his family had. And while he argues to this Court that his family supported the government of Sierra Leone, in his brief to the Board of Immigration Appeals, several times he indicates that he was persecuted on account of his political neutrality, that he didn't support the rebels or the government. That's a motive that's adequate. It could be. It could be. But I don't believe in this case that even if the rebels believed that he was politically neutral, that the record demonstrates that they were motivated to abduct him and to continue to detain him because of that. But why were they beating him all the time? Unfortunately, again, I think the record of Sierra Leone, of the rebels, is that they beat numerous, thousands of people indiscriminately. But they weren't beating people, I think, who were with them. No. But if that were the theory in this case, then I believe everyone who the rebels ever abducted or held would be eligible for asylum. And I think the asylum laws require more than that, that the I.J. wasn't required to accept a conclusory opinion that wasn't supported by direct or direct evidence in this case. Mr. Bacilli simply was unable in this record to distinguish that the dangers he faced and the harm that he faced was different than the general population of Sierra Leone. And, in fact, in his asylum application at page 245, he indicates that the rebels, when they came to his house, it was an attack on the town, the entire town, because that was a diamond region, such that... But why were they attacking this town? Well, he says in the application that it was because it was a diamond mining area, and so the rebels might have wanted to get control of that particular village. They must have perceived these people as being generally opposed to them. Even if they did assume that they were generally opposed to them, does that mean, then, that everyone in the village deserves asylum? Well, if their whole family gets killed and they get detained and beaten, did that happen to everybody in the village? We don't know, but it's quite possible that that would have happened at the time in Sierra Leone, unfortunately. But maybe all those people would be entitled to asylum. They could be. We would submit that on this record that there certainly are instances, of course, in Sierra Leone where a person could demonstrate past persecution on account of an enumerated ground, but we would submit that this is just not that record. In fact, the Petitioner, Mr. Pichilli, really never set forth, again, apart from conclusory statements, you know, what political opinions his family held. And the only statement in the record that he or his family ever expressed any views to the rebels was the one statement pointed out by opposing counsel that when the rebels came to his house to abduct Mr. Pichilli, and they were clearly already on their way to do so, that his parents, he said, so my parents said, no, we do not support you. We don't take our own child with you. And that's the only statement in the record. It's pretty significant, isn't it? Well, it's significant to the extent that the rebels may have known at that point that the family was opposed to them, but it's another question to determine whether that motivated the rebels. As indicated, the rebels were already on their way to grab Mr. Pichilli and abduct him, and there's nothing in the record that says the rebels continued to take him because the parents indicated their objection to it. I believe the record in this case would establish that the rebels were going to do that anyway, and the fact that his family expressed an opposition to them didn't change their opinion or motivate them in any way. Well, you said earlier that they were coming to wipe out the town because of the fact that it was a diamond town. Well, that's Mr. Pichilli's claim, and that's only mentioned in his asylum application. So, again, it was Mr. Pichilli's burden to demonstrate that he was persecuted on account of an enumerated ground, and we would submit that the record doesn't compel a contrary conclusion. What about if we were to disagree with you? Is he entitled to humanitarian relief? Well, that would be up to the agency. We would submit that if the court found that substantial evidence didn't support the agency's conclusion that it was the persecution was not on account of, then we would submit that the case should be remanded back to the agency for the agency to determine whether he did warrant asylum as a matter of a humanitarian grant. Because the reason the agency didn't get to that, of course, was because they didn't find past persecution, and the only way an individual is eligible for a humanitarian grant of asylum is if he or she demonstrates past persecution on account of an enumerated ground. If there are no other questions, the government will rest. I think I have about one minute. Thank you, Your Honors. There is additional evidence in the record, AR-145 and AR-146. At the top of page AR-146, he states in his affidavit, I was imprisoned, tortured, beaten, starved, and my life was threatened by the rebels because I refused to join them in fighting against the government.  He also says that I believe that the past persecution that I suffered by the RUF rebels was because of my race, religion, and political opinion, since I refused to join them. Another thing I wanted to comment on is the government's argument that the RUF killed hundreds of thousands of people seems to me that that pretty much undercuts the government's argument that the RUF is simply trying to recruit people. As long as that's going on, you can't be making the claim that they're out trying to recruit people to join their army and their refugees at the same time they're killing hundreds of thousands of people, both men and women. Also, continuing the beatings while he was in detention, to me, again, undercuts the government's simple RUF recruitment argument. If you're trying to recruit somebody, why do you continue to beat them? Finally, once again, the government goes back to this issue of what's motivating the rebels. And I think that it's pretty clear that, in this case, Mr. Pichilli suffered at the hands of them based upon his political opinion and his religious beliefs. Thank you very much, Your Honors. Thank you. The matter will be submitted. Our next case for argument, I believe, is Barrett v. Bellicue. Thank you.
judges: Fletcher, Paez, Schwarzer